1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

    BILLINGNETWORK PATENT, INC.,

4                                       :    CIVIL ACTION NO.

            Plaintiff,                  :

5                                       :

                v.                      :

6                                       :

    MODERNIZING MEDICINE, INC.,         :

7                                       :    17-1066-LPS-CJB

            Defendant.

8                              - - -

9                         Wilmington, Delaware
                          Thursday, July 5, 2018

10                        *Oral Argument Hearing*

11                             - - -

12    BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge

13    APPEARANCES:              - - -

14
                    O'KELLY ERNST & JOYCE

15                  BY:  GEORGE PAZUNIAK, ESQ.

16                       Counsel for Plaintiff

17
                    FISH & RICHARDSON, P.C.

18                  BY:  RONALD P. GOLDEN, III, ESQ.

19                       and

20                  FISH & RICHARDSON, P.C.
                    BY:  DAVID B. CONRAD, ESQ., and

21                       THERESA M. DAWSON, ESQ.
                         (Dallas, Texas)

22                       Counsel for Defendants

23

24
                              Brian P. Gaffigan

25                            Registered Merit Reporter

1                              - oOo -

2                        P R O C E E D I N G S

3                 (REPORTER'S NOTE:  The following oral argument

4      hearing was held in open court, beginning at 10:33 p.m.)

5                 THE COURT:  Good morning.

6                 (The attorneys respond, "Good morning, Your

7      Honor.")

8                 THE COURT:  Let me have you put your appearances

9      on the record for us, please.

10                MR. GOLDEN:  Good morning, Your Honor.  Ronald

11     Golden on behalf of Modernizing Medicine from Fish's

12     Wilmington, Delaware office.  With me is David Conrad and

13     Theresa Dawson from Fish's Dallas office.

14                THE COURT:  Welcome.

15                MR. GOLDEN:  Thank you.

16                MR. PAZUNIAK:  Good morning, Your Honor.  George

17     Pazuniak for plaintiff, Billingnetwork.

18                THE COURT:  Good morning to you as well.

19                So we're here on the defendant's motion relating

20     to 101.  We'll hear from defendant's first.

21                MR. CONRAD:  Thank you, Your Honor.  Good

22     morning, Your Honor.  David Conrad for the defendant.

23                First off, Mr. Golden informed me that it's your

24     birthday today so "happy birthday!"  I don't know if you

25     wanted that on the public record.

1          THE COURT:  I will get back at him for that.

2    Thank you.

3          MR. CONRAD:  I'll try to be brief so we can all

4    get out and celebrate.

5          Your Honor, we moved to dismiss the complaint

6    under Rule 12(b)(6) for failure to state a claim.  The

7    asserted patent is not eligible under the Supreme Court

8    *Alice* standard; and we briefed the *Alice* standard in our

9    motion and our reply brief.  Today, I'd like to speak a

10   little bit more in plain English about what is the issue.

11         THE COURT:  Well, and then also, as you all

12   know, there have been a lot of *Alice* 101 decisions since the

13   time you finished the briefing.  I think you all gave me

14   your views on *Aatrix*, but that would not be the only

15   decision that has been issued since then.  Do you think any

16   of those other cases may affect the analysis here?

17         MR. CONRAD:  Not at all, Your Honor.  *Aatrix* was

18   raised, and the plaintiff raised it as known supplemental

19   authority.  We addressed it, and the issue there had to do

20   with, is the 12(b)(6) the right time to do that because

21   allegations in the complaint should be assumed to be true?

22   And the answer is no.  If there is any allegations that are

23   relevant here, it relates to novelty rather than the issue

24   of eligibility.

25         The plaintiff has alleged that there are things

1    that they do as a whole that were new, but when you look at

2    the individual components that make up what they claim to

3    be an invention, it's just standard conventional generic

4    commercially available technology that was available at the

5    time the patent was filed.

6            THE COURT:  So, for instance, *Berkheimer* talks

7    about how that second step of *Alice* can often but not always

8    be disputed fact, making 101 not amenable to resolution on

9    the motion like this.  You don't think that impacts the

10   analysis here?

11           MR. CONRAD:  Not at all.  If I remember

12   correctly, *Berkheimer* says that its patent was each element,

13   there may not be a dispute about whether each element was

14   conventional, but the ordered combination might have been

15   unconventional use of the technology.

16           Here, what this plaintiff has done, what this

17   patentee did was essentially simply take an idea, which is

18   billing, and put it on the Internet, and they did that using

19   conventional elements.  So when you break it down the way

20   *Berkheimer* did, when you look to the conventional elements,

21   there is no dispute here that they're all conventional.  It

22   is just standard web browser, standard web server.  There is

23   another embodiment about thin client access technology,

24   which is just commercially available Citrix.

25           When you look at it as an ordered combination,

1    however, the ordered combination in this case is putting

2    billing records on the Internet.  So it's not that there is

3    anything interesting or conventional they were doing when

4    you look at the claim as a whole.

5              1999 was the surging height of the dot com era,

6    so basically that entire era was taking things and putting

7    it on the internet.  That is all this patentee has claimed

8    to do.

9              THE COURT:  You can go on to your plain language

10   or analysis you said you wanted to get to.

11             MR. CONRAD:  Thank you, Your Honor.  So I'll

12   just touch a little bit more on that first by looking at

13   what the allegations are in the complaint.

14             What you see here is that they have alleged that

15   in 1999, the named inventors identified what they called

16   problems with standalone and batch billing systems.  That's

17   a little unclear to us what batch billing systems means, but

18   presumably it means simply just doing a lot of billing

19   records at once.  This is something that has been done for a

20   long time just by paper in the accounting department of ...

21             THE COURT:  And that's a quote from the

22   patent-in-suit; correct?

23             MR. CONRAD:  I don't believe batch is.  And

24   standalone is not something I found in the patent.  However,

25   I believe it refers to the concept in the patent about how

1  they acknowledged in the prior art that billing systems,

2  electronic billing systems were essentially standalone on

3  the customer's computer.  The health administrator's

4  computer.

5          So they said we don't want to do that.  We want

6  to build a business that has a website that allows people

7  to access this from a website instead of their own computer.

8  That is what they have alleged in the complaint essentially,

9  which is that to improve on this, they contemplated the use

10  of a "browser-based" system, the worldwide web, the

11  Internet, which was applied to transfer "data and query

12  forms" from a server to a subscriber without the need to

13  transfer any underlying software application, meaning

14  instead of this all being on the health administrator's

15  computer, it's simply a website that they accessed through

16  a conventional web browser.

17          The data and query form, there is nothing

18  special about that in the patent.  In fact, when you look at

19  the specification when it mentions them, it lists that

20  they're not even shown in the figures.  It doesn't describe

21  what they are.  It says at best that the customers create

22  them, which is no different than what billing has been for

23  the longest time in accounting departments of paper forms

24  submitted to Accounting for them to create invoices to send

25  to customers.

1              Paragraph 16 of the complaint sums this all up.

2     It says:  At its core, it is a computer-implemented, Internet

3     browser-related system designed to solve technological

4     problems in conventional industry practice as of 1999.

5     That technological problem is a legal conclusion.  It is not

6     a fact that is assumed to be true.  All it's saying is that we

7     want to move this from their computer onto the Internet.

8              So that is what the patentees invented.  And

9     the claim itself is just a recitation of the conventional

10    elements that existed at the time.  The patent doesn't claim

11    to invent it.  In fact, it goes so far as to state that the

12    whole point of this invention, if you look at column 3,

13    line, about line 17, says:  It's an object of this invention

14    to utilize recent advances in software Internet-related

15    technology.

16             So all they're doing is saying there is

17    technology out there now that says we can put this on the

18    Internet.  We're going to put this on the Internet and claim

19    a patent on it.

20             So now that we know what the invention is, the

21    question that needs to be answered today is, is that

22    invention under the Section 101 jurisprudence as it exists

23    today?

24             There are several Federal Circuit cases out

25    there that provide the answer "no" to that.  One of them is

1    *BuySAFE v Google* that said, quote, "that a computer that

2    receives and sends the information over a network with no

3    further specification is not even arguably inventive."

4                    *Ultramercial v Hulu* said, quote, "the claims

5    invocation of the Internet also adds no inventive concept

6    as we have held the use of the Internet as not sufficient

7    to save otherwise abstract claims from ineligibility under

8    101."

9            All this patent is, at the end of the day, a

10   standard fundamentally economic practice, billing, as

11   applied to the Internet.

12           THE COURT:  So the prior art was, do this

13   fundamental economic practice on it a computer, and all they

14   have done is say move it from the client computer to the

15   Internet.  That's how you would characterize these claims;

16   correct?

17           MR. CONRAD:  That's correct.  And the patent

18   actually gives a little bit more explanation to explain that

19   it's really not a technological issue.

20           I'll direct your attention to column 1 of the

21   patent where it starts out, around line 13.  It says:  The

22   traditional approach to billing for services rendered

23   includes the requirement that the business purchase hardware

24   and software as well as trained personnel to perform the

25   billing function.  Meaning it was traditionally done

1    technologically at their own computer.

2              But the next paragraph, around line 22, says:

3    The next major developmental step in accomplishing this

4    function has been to outsource such billing and accounting

5    activity.

6              So their advancement of the art that they're

7    interested in, they said the next advancement was the human

8    function of someone else doing it rather than doing it at

9    your own computer.

10             So what they're saying is let's take one more

11   step and we'll do it for you on our web server and you can

12   access it on our web server.

13             THE COURT:  You have mentioned *BuySAFE* and

14   *Ultramerial*.  One part of the 101 analysis, it seems at this

15   point, is figure out which case has the technology that is

16   most analogous to the technology in front of me.  If you had

17   to pick one, is it one of those two or is it some other case?

18             MR. CONRAD:  I think that is a hard question to

19   answer, but those two cases as well as *Cybersource* which

20   they have cited are the most similar out of all of the cases

21   that are out there.  *Cybersource v Retail Decisions*.  Those

22   three are the most similar out of the existing jurisprudence

23   that we can locate.

24             It is similar in concept to *Alice* which is an

25   economic practice on the Internet.  However, that did cite

1   many things like a database server; right?  So it's hard to

2   say it is directly closest to *Alice*.

3             THE COURT:  So the patentee pointed out that

4   these particular claims, at least some of the terms have

5   been construed by I think at least two other courts.  It's

6   unclear to me -- and I'll talk to Mr. Pazuniak about it

7   shortly.  It's unclear to me if they're asking me to follow

8   those constructions or what, if any, difference it would

9   make, but what is your view?  Do I need to construe these

10  claims in order to resolve this motion?

11            MR. CONRAD:  There is no need to construe the

12  claims.  They do reference an order which seems to construe

13  several means-plus-function terms, but there is no need to

14  construe means-plus-function terms if it's apparent from the

15  face of the patent that there is really nothing but generic

16  functional structure like we have here where most of the

17  components are black boxes or admittedly conventional.

18            If you need to adopt constructions that were in

19  that court, nothing would change here.

20            THE COURT:  The means-plus-function terms I

21  think were construed by one of the other courts?  Is that

22  right?

23            MR. CONRAD:  I believe so.  I don't have the

24  actual order in front of me.  I could pull it up if you

25  want.  My recollection is that it simply recited generic

1    structural components like hardware and software.

2              THE COURT:  Your view is if I adopted whatever

3    those constructions were, you still prevail?

4              MR. CONRAD:  Yes, Your Honor.  And the only that

5    they have raised with specificity is the issue of the forms.

6    So I'll briefly address that.

7              They point to the claim limitation:  transferring

8    substantially only billing and data entry forms.  And that's

9    vague because it's not really something that is described in

10   the patent.

11             What the Court construed it as, in one of the

12   prior cases, is something that is close to what the

13   plaintiff alleged, which is:  forms without any underlying

14   software applications wherein most but not necessarily all

15   of the forms are billing and data entry forms.

16             So it's not identical to what the plaintiff had

17   proposed, if I recall correctly, but the thrust is the same

18   where the plaintiff was trying to allege the most -- least

19   technologically advanced construction possible, meaning all

20   that is being transferred back and forth are forms.  There

21   is no software going back and forth.  And that I think is

22   tied to the concept that traditionally it was done -- it was

23   software that was just run on a computer, and since they

24   said let's just use the standard Internet web technology,

25   web browsers, web browsers at its most basic functional

1    level simply transmits forms back, adjust information, no

2    software.  And I think that they were trying to say let's do

3    this at least as advanced as possible.  And I think that if

4    you construe it as favorably as they were seeking, you can't

5    get more conventional than what they're going after.

6         THE COURT:  There is some of the briefing

7    talking about claims other than claim 1 which I understand

8    are not asserted.  Does your motion ask me to make a

9    decision with respect to the claims other than claim 1?

10        MR. CONRAD:  Well, I think we briefed the issue

11   sufficient to address all the claims, Your Honor.  Their

12   assertion that only claim 1 was alleged in the complaint,

13   I'm a little unclear on that because the complaint actually

14   says:  at least claim 1.  Claim 1 was later highlighted as

15   representative.

16        If they're disavowing the assertion of claim 1

17   formally -- which I don't think that they have done.  I

18   think they simply said in their briefing they didn't -- they

19   clearly only alleged claim 1, but that is not actually the

20   case in the complaint.

21        THE COURT:  But if they stand up here and say

22   that if this case proceeds, it will only proceed on claim 1,

23   then I don't need to make a finding on the other claims?

24        MR. CONRAD:  I think that you can, Your Honor.

25   But I don't -- and I think that we provided sufficient

1   briefing for you to be able to do that.

2          THE COURT:  But I don't have to, depending on

3   what Mr. Pazuniak says?

4          MR. CONRAD:  I'm not certain exactly what the

5   law is on that.

6          THE COURT:  Well, I guess what I'm really

7   getting at is what are you requesting that I do subject to

8   whatever we hear from Mr. Pazuniak?

9          MR. CONRAD:  Yes.  We're requesting that all of

10  the claims be invalidated.  The reason being that there is

11  no substantial difference between them.  They're all

12  alleging essentially the same idea and essentially the same

13  elements in all claims.

14          There are two different embodiments in the

15  patent, and I think the claims alleged those two different

16  embodiments.  One is the web browser embodiment, and one is

17  the commercial, commercial software Citrix embodiment, the

18  direct access server.  Both of those would be, they have

19  exact same analysis as we presented in the briefing.

20          THE COURT:  You answered my questions.  Is there

21  anything else you want to say?

22          MR. CONRAD:  No, Your Honor.

23          THE COURT:  Okay.  We'll get you back on

24  rebuttal then.

25          MR. CONRAD:  Thank you.

1          THE COURT:  Good morning again, Mr. Pazuniak.

2          MR. PAZUNIAK:  Thank you, Your Honor.  I have

3    some slides, if I may hand them up to the Court.

4          THE COURT:  You may.

5          (Documents passed forward.)

6          MR. PAZUNIAK:  As we pointed out in our brief,

7    the concern under Section 101 is not tangibility, that is,

8    whether there is something physical, but the question of

9    whether or not there is a preemption of an area of

10   technology based on abstract results.

11         THE COURT:  You have moved quickly past your

12   preemption slide.  It's interesting.  You start there in

13   your brief, which admittedly was written six-or-so months

14   ago.  It says that the most important thing and essentially

15   the starting point, if I understand you correctly, is to

16   figure out preemption, but that is not how the cases go.

17   The cases tell me to do *Alice* Step 1 and Step 2 and only

18   thereafter, if need be, think about preemption.  Do you

19   agree that is the proper analysis?

20         MR. PAZUNIAK:  I view it a little bit differently.

21   I view that Steps 1 and 2 are an effort to determine whether

22   there is preemption.

23         THE COURT:  I think that is right, but when I

24   sit down and figure out are these claims patentable, do you

25   say I should first think about preemption or do I think

1    about *Alice* Step 1?

2              MR. PAZUNIAK:  No, no.  *Alice* Step 1.

3              THE COURT:  And then *Alice* Step 2?

4              MR. PAZUNIAK:  Then *Alice* Step 2.  But the *Alice*

5    Steps 1 and 2 as a whole are informed by the overall concept

6    of preemption.

7              So we go to Step 1, which begins with the

8    claims, it is interesting that the briefing that was

9    undertaken by the defendant, and as Your Honor just heard

10   now, there is no discussion of the claims except very

11   peripherally.  Rather, we have heard about generic

12   components about this is what the patent is about.  Here is

13   the prior art, and it's all conventional, but nothing that

14   looks upon the claims to determine whether those claims

15   define something that is not an abstract idea.

16             And this is the problem, because the *Enfish*

17   court recognized you can take almost any technology and

18   abstract it to the point that you can say, aha, here is

19   abstract ideas.

20             The defendant has characterized the inventions

21   here as nothing more than a billing system using a browser

22   and a web server.  Of course, if that was the case, we would

23   have one thing.  But that is not what the claims are.  And

24   this is what is missing.

25             THE COURT:  If, at the end of the day, I look at

the specification and the claims and say that this patent is

about nothing more, and the claims are directed to nothing

more than electronic billing on the Internet, you do agree

that that would mean you don't survive a 101 motion?

MR. PAZUNIAK:  It would be on, I would say, sort

of the gray area between something that is abstract and

something that is not abstract, because I think electronic

billing utilizing a web server and a browser is already

structural.  It may be obvious, but it is structural.

However, I don't think Your Honor will need to get to that

because there is a lot of other elements and limitations in

the claims that provide even further structure.  So I don't

think we need to go there.

THE COURT:  I'll let you, of course, do this in

whatever order you want, but I am curious because I didn't

see it clearly in the briefing.  What structure is there in

these claims that is something other than conventional,

routine, well understood computer architecture?

MR. PAZUNIAK:  Well, there are two answers.

One, I think in the briefing, we did point out that the

means-plus-function elements do provide additional structure

which we will discuss with him shortly.

But there is also the broader issue, that at

*Alice/Mayo* Step 1, it doesn't really matter whether we're

talking about conventional or routine technology.  As Your

Honor has pointed out in other cases, and many cases say

this, that under Step 1, you can have totally conventional

elements but if they are put together in a particularly

ordered combination, that is novel, well, that is

patentable, and the conventional elements provide the

structure, the tangibility or whatever you want to call it,

remove it from the abstract.

The fact that elements are conventional only

comes in as a Step 2 issue.  But we're right now at Step 1,

and at Step 1, we only look to determine whether the ideas

are abstract, or is there something that, to use a loose

phrase, has some tangibility to it.  If it has tangibility,

even if it's conventional, it is not an abstract idea.  It

may be obvious, but then it's invalid under Section 103 or

Section 102, but it's not patent ineligible.

THE COURT:  There are some cases where the

patentee says there is some non-conventional structure here.

I can point you to it as a particular limitation in the

claims.  There are others where the patentee acknowledges

there is no such novel non-conventional structure, but the

ordered combination is what gets me over the 101.  Which

case are you?

MR. PAZUNIAK:  The first case.

THE COURT:  You are the first case.

MR. PAZUNIAK:  I will argue the first case.

```
1            THE COURT:  You will argue that.

2            MR. PAZUNIAK:  Yes.

3            THE COURT:  And it is going to be the

4    means-plus-function limitation; is that right?

5            MR. PAZUNIAK:  Yes.  As we go on, yes, in part,

6    it's the overall structure, but certainly we will focus on

7    the means-plus-function elements.

8            But if we fail on that, then, yes, the ordered

9    combination is the backup argument that we would still argue.

10           THE COURT:  Okay.

11           MR. PAZUNIAK:  So let's take a look at the

12   claims.  And on this slide 5, I just put in the entire claim.

13   We begin with something that already has some structure,

14   which is the integrated billing data processing and

15   communication system.  It's already beginning to put some

16   structure on it.

17           We next have a database server.

18           And this is one of those elements that was

19   already previously construed.  We have cited that decision.

20   It's DI 16-3.

21           Whether or not those constructions are

22   absolutely correct, whether Your Honor in the future will

23   or will not potentially amend them, I think is a separate

24   issue.  The point is that "database server" has already been

25   recognized as having already some structure to it, and that
```

1    is that it is dedicated to storing and providing access to a

2    shared database, including data and forms.

3               So we don't have a generic "database server."

4    Rather, we have a database server that is already programmed

5    to provide access to a shared database, including data and

6    forms.

7               THE COURT:  So, yes, let me stop you there.  A

8    couple things.

9               First off, with respect to claim construction,

10   what is the plaintiff's position?  Do I need to resolve

11   claim construction disputes before resolving this motion?

12   Do I instead adopt the prior constructions or do you have

13   some alternative even more favorable to the plaintiff's

14   constructions for me to assume?

15              MR. PAZUNIAK:  We believe that any time a Court

16   reviews claims, construction is required.  Words in a claim

17   may have their ordinary meaning but that itself is sort of a

18   construction.

19              But, yes, we do believe that claims should be

20   construed any time they're considered.  And we had submitted

21   the decision.  We're comfortable with the decision.  It's

22   construction as a matter of law.  So here is a court that

23   as a matter of law reviewed the claims after extensive

24   briefing and argument and made certain determinations in

25   a very lengthy, well thought thorough decision.

1    THE COURT:  All right.  Well, when I am trying

2    to figure out, if these claims are patentable and can

3    survive the motion.  As you know, sometimes we have cases

4    where the parties agree you don't have to resolve any claim

5    construction disputes.  Other cases, the parties say you do,

6    and then I need to know what they suggest I say the claims

7    mean.

8    I'm understanding, but if I've got it wrong tell

9    me, that your position is, yes, I need to construe these

10   claim terms, and, yes, I should, in doing that, for purposes

11   of this motion, just simply adopt the constructions of the

12   two earlier courts.  Is that correct?

13   MR. PAZUNIAK:  That's correct, Your Honor.

14   THE COURT:  And it is two, right?  The Illinois

15   and the Florida courts?

16   MR. PAZUNIAK:  It is actually we cited the

17   Florida Court because the Illinois court I don't think had

18   as much of a construction.  I think the Florida Court is the

19   one that really went deeply into the issues.

20   THE COURT:  So what the plaintiffs would ask me

21   to do is just simply plug in as the meaning for each of the

22   terms addressed in the Florida opinion, the Florida decision --

23   MR. PAZUNIAK:  That's correct.

24   THE COURT:  -- for purposes this motion, and

25   you all, going forward, can argue what you think the right

1    construction is.

2              MR. PAZUNIAK:  That's fine, Your Honor.  Yes.

3    And the decision is D.I. 16-3.

4              THE COURT:  Thank you.

5              MR. PAZUNIAK:  So then we go to the next

6    element, which --

7              THE COURT:  Oh.  But on that first one,

8    "database," are you arguing that that is novel,

9    non-conventional structure, inventive in some way?

10             MR. PAZUNIAK:  Well, I am arguing that it is a

11   structured element.  Whether or not it is a novel, I don't

12   know.  It hasn't really been argued.  But I would say that

13   it is not conventional or routine because I'm not aware of

14   that in 1999, which, you know, both sides agree that we have

15   to look at 1999 as the focus point.

16             Now, defendant says, well, 1999, that's the hot

17   period of the dot com era and a lot of things were being

18   done.

19             Well, that may or may not be true, but I don't

20   believe that databases that provide access to a shared

21   database, including data and forms, may have been known.  I

22   don't know that it was conventional or routine.

23             THE COURT:  Well, let me ask you this.  You I

24   think maybe have alluded, it might have been in one of your

25   letters, to there being fact disputes here that you think

1 will necessitate denying your motion, but it was unclear to

2 me until I came in here what those fact disputes are.  Is

3 one of them, is a database in 1999 as claimed in claim 1

4 of these conventional and routine, or is that not a fact

5 dispute?

6     MR. PAZUNIAK:  Well, I think the combination

7 certainly of claim 1 has not been conventional and routine,

8 but, yes, database is one.

9     The problem, Your Honor, is that defendant had

10 the burden of proof, proof by clear and convincing evidence

11 on all the issues, including whether something was routine

12 or conventional.

13     There is no expert report here.  Everything

14 about -- there is no cited prior art.  Defendants entire

15 case is built entirely upon counsel's ipsi dixit that, oh,

16 Your Honor, of course this is routine, of course this is

17 conventional.  You know, a lot of hand waving.  I'm sorry,

18 Your Honor, that is not how you prove facts.  This is not

19 how you prove --

20     THE COURT:  If your specification says, for

21 example, the database is the database that we all are aware

22 of, that would be sufficient evidence for the defendant to

23 prevail on that point, wouldn't it?

24     MR. PAZUNIAK:  It would if we said that, but I

25 don't believe we did.  And we certainly did not say that a

1    network device that provides access to a shared database,

2    including data and forms, was routine.  And the issue again

3    is not whether it was novel or whether it would pass a

4    Section 102 standard.  Conventional and routine is a

5    different standard than whether something is novel.  And

6    this is what is entirely missing in the record presented by

7    defendant.

8           So if I have answered Your Honor's question,

9    I'll go to the next limitation.

10          THE COURT:  Yes, that's fine.

11          MR. PAZUNIAK:  Which is the requirement that

12   there be a home page on the web server that provides a

13   plurality of subscriber areas.

14          And, again, that has -- that term "subscriber"

15   has already been construed.  And, again, subscriber areas on

16   the home page is -- it is not just any web server with any

17   web home page.  Now we have a requirement that there be

18   delineated a certain area that is identifiable as a

19   subscriber area that performs certain function.

20          So, again, we have a web server that may be

21   conventional but now it's programmed to be more specific to

22   provide the certain structure.

23          THE COURT:  Are you contending that that

24   limitation is routine?

25          MR. PAZUNIAK:  Yes.

1          THE COURT:  Is something other than routine and

2    conventional?

3          MR. PAZUNIAK:  Yes, absolutely.

4          THE COURT:  So there is that minimum of fact

5    dispute.

6          MR. PAZUNIAK:  Yes, absolutely, on the

7    subscriber areas.

8          And then we get to the first means-plus-function

9    limitation.  Again, any time you have means-plus-function,

10   you have to have a structure, because that is, that is the

11   definition of a means-plus-function element.

12         And in this case, the Florida decision provided

13   the structure.  And we pointed out in our brief that both

14   of these -- this means claim and the next means claim are

15   important.  And in this case, again, the structure was

16   defined as a computer system programmed to transfer data.

17   And, well Your Honor can certainly read the rest of the

18   construction.

19         But, again, we now again have a programmed

20   piece of equipment that is a structure under the law.  And

21   Your Honor will recall from other cases that Your Honor

22   has decided that means-plus-function algorithms are a

23   structure.  And I don't think that the law would be any

24   different when we're looking at 101.

25         But also of interest is that the part of the

1    Court's construction said that this means claim is read with

2    Figures 1 and 2, but -- sorry -- Figures 1 and 3 of the patent.

3              And if we look at Figure 1 of the patent, again,

4    we have something that is very clearly tangible.  We do have

5    a home page.  And you will see, and I have it in the dotted

6    line block there, you have the various subscriber areas

7    which are defined by logic rules and then associated with

8    database server.

9              Figure 3 is just another version of the same

10   system, but I have put the dotted lines around an area that

11   actually I thought defendant's counsel just said never

12   existed in the patent.  And, specifically, I'm pointing to

13   the boxes that have HTML input forms and HTML query forms.

14             I thought I heard counsel say that the patent

15   never actually describes those forms.  But here they are in

16   Figure 3 which is incorporated into one of the means claims.

17             THE COURT:  Well, what more does it tell us?

18             MR. PAZUNIAK:  Well, what it tells us is HTML,

19   of course, is a technical, you know, particular technology,

20   as I'm sure Your Honor has heard in many cases.  Hypertext

21   transfer protocol -- whatever it is.  I'm getting a little

22   old.  But HTML is a defined technology.  And here we have

23   both input query forms and input forms.  And these forms are

24   a structure, no ifs, ands, or buts, when you have a web

25   server and a PC, and they may be on the Internet, but when

1    you are transferring these forms, you are transferring

2    something tangible in the patent sense, tangible in a sense

3    that these are defined structures.

4              THE COURT:  And you contend that these are

5    something other than conventional and routine at the time?

6              MR. PAZUNIAK:  Well, HTML, by itself, of course,

7    is not novel.  That is conventional.  But what is completely

8    new, and this in fact was the whole foundation of the

9    patent, is that the electronic billing system that is

10   claimed here is entirely based on the fact that you had HTML

11   query forms going from a PC to these, to the subscriber area

12   in a home page.  You have a database server that provides

13   the information.  And then you have a return of forms from

14   the database through the subscriber area to the PC.  That is

15   all structure and it's all novel.  This was in fact the

16   foundation of the patent.

17             So we then continue to the next

18   means-plus-function element which is to provide real-time

19   electronic viewing and theory access of data and billing

20   stored in the database server.

21             This is entirely novel.  This is definitely not

22   conventional.  There was never any in the prior art.  Again,

23   this is why I've been saying it is the foundation of the

24   novelty of the patent is you have not only the passing of

25   the form but you have the ability of the user sitting at the

1    PC at the terminal being able to send queries, being able to

2    view these data and billing forms that are being sent from

3    the database server.

4              And this, again, the structure is entirely new.

5    And then you have, of course, the PC computer that is

6    connected to the back server.

7              THE COURT:  Are you contending there is a

8    factual dispute whether that is conventional and routine?

9              MR. PAZUNIAK:  I would say the PC computer is

10   obviously conventional, computer connected to a database

11   server on the Internet is conventional.  But the concept of

12   being connected to the database server for controlling said

13   forms, which are the query access of data billing forms that

14   are stored, that is entirely new.  That has never been done,

15   as far as I know, prior to this invention.

16             So the question now becomes, now that we have

17   looked at these claims as opposed to generic abstractions of

18   it, is this something directed to an abstract idea?

19             Well, in the first instance, the invention here

20   does involve billing.  And, of course, if that is all that

21   was involved, we would agree, that is abstract.

22             We put billing on a computer.  That certainly

23   would be abstract because all you are doing is using the

24   computer as a tool.

25             Then we get to actually the question Your Honor

1    just asked a little while ago:  An electronic billing

2    system, is that a sufficient structure to avoid abstraction?

3    And as I indicated, we're now sort of on the edge of what

4    may or may not be abstract.

5              What if we add the web server and client browser?

6              Well, again, that is sort of like edge area.

7              But what is interesting is this is where, this

8    here web server and client browser, this is where

9    defendant's arguments stop.  They say:  Okay.  This is all

10   that it is.  We don't -- and, therefore, because this is

11   all that it is, you have abstract ideas implemented on

12   conventional computers and so we throw everything out.

13             What is entirely missing is what we have just

14   talked about, is that you have a client PC and browser and

15   a website that now has a home page.  That home page, by

16   definition, goes through a secure line to a very clearly

17   defined database server.  That home page is not just the home

18   page on a web server but one that has something structural

19   there, that defines a subscriber area.  And that subscriber

20   area is utilized to transfer these billing and data entry

21   forms between the subscriber area and the client PC.

22             This is all structure -- all structure that

23   defendant has completely ignored in its presentations, both

24   in its briefs and again here today.

25             Then finally, of course, we have the claim

1    limitation that the user have access to all of these billing

2    and data entry forms and be able to access the data server.

3              So, Your Honor asked also what about some of

4    these cases?  What cases are pertinent?  And whether there

5    are some newer cases that have been decided since the

6    briefing has been completed.  And I will try to go through

7    some of them.

8              The *Enfish* case, which was heavily briefed in

9    our case, again, you have a data storage and retrieval system.

10             This is the claim that was involved in that case.

11   It is something that's pure software, pure logic of fixing

12   or enhancing the operation of a computer memory.

13             And what did the Court hold?  It said that this

14   self-referential table is a specific type of data structure

15   designed to improve the way a computer stores and retrieves

16   data in memory.

17             Well, that is what we do in the '229 claim.  We

18   have a specific database, just like in *Enfish*.  The data and

19   billing forms, which is a particular implementation that is

20   used to improve the way computers provide electronic billing.

21             And, actually, defendant has pointed out that we

22   have actually, in columns 1 and 2 of the patent, a very long

23   discussion of what the prior art was.  And then when you get

24   to the brief summary of the invention and in the bottom of

25   column 2 to the top of column 3, yes, there is a whole

1    discussion of how this technology with these forms, with the

2    subscriber areas, this is what has created and improved upon

3    the existing system.

4              So, well, let's finish these cases.  Then we had

5    the *McRO* case.  Again, if you took a look at the claim in

6    that case, all the claims are related to rules.  It's a

7    method, not a product.  It's a method.  And it just talks

8    about obtaining, generating, applying rules.  And in this

9    case, the Court said, again, this is patentable.  And what

10   is important in particular, the Court said:  While the

11   result may not be tangible, there is nothing that requires a

12   method "be tied to a machine or transform an article" to be

13   patentable.

14              And, of course, that I think applies here

15   because even though the HTML or other data and billing form,

16   you know, it's not some piece of paper that you can pick up.

17   It's not tangible in that sense.  It does have structure,

18   and it is subject to a number of specific rules.

19              Then we have the next case, which is *Visual*

20   *Memory vs. NVIDIA*.  And, again, you have a computer memory

21   system where the critical point is:  wherein a programmable

22   operational characteristic of said system determines a type

23   of data stored by the cache.

24              So, again, this is what we had been talking

25   about previously.  You have a computer memory which is a

standard conventional piece of equipment but it is now

transformed because there is a certain structure associated

with that memory.  Structure that is software structure, not

a physical structure.  And the Court said, well, again, this

is a claim that is directed to an improved computer memory

system, not the abstract idea of categorical data storage.

Again, the Court emphasized, having one or more

programmable operational characteristics.  This is exactly

what the '229 patent claims have.  They have a program.

This is a computer programmed with certain operational

characteristics.  And that is a structure, and it is just

like the *Visual Memory* case.

We have provided an improved web server,

improved database, improved delivery method, not just the

abstract idea of providing electronic billing services.

THE COURT:  What does the '229 say about how

that improvement is accomplished other than just outsourcing

it to the Internet?

MR. PAZUNIAK:  Well, you begin with the web

server having a home page with the subscriber areas, with

the subscriber areas being associated with a database server

that has -- is a repository of rules and forms.  So now

already this is not just the Internet, it is a very defined

structure of the subscriber area plus the database server.

The concept of transferring queries and

1    information via forms involving data and billing forms

2    between the subscriber area and the user PC, again, this is

3    totally novel.  It is not just a PC operating a browser

4    looking at a web page.

5              Normally, what is conventional, I can take this

6    computer, go to the Internet and I can view, I can view

7    anything.  Well, that is conventional.  But when you start

8    using the web server and the browser to have a prescribed

9    subscriber area, with the limitations that we thought about

10   and communicate via these data and billing forms, that is

11   something completely different.  And it's a substantial

12   add-on to everything that has been done.  And that is not

13   conventional.  It was not conventional in 1999.

14             THE COURT:  You talked about a few cases, and I

15   know you have a few others you might want to get to.  If I

16   perhaps unfairly said to you which is the one case most

17   analogous to this case, would you be able to answer that?

18             MR. PAZUNIAK:  I think the case -- I would point

19   to about four cases that I think I have here, which is the

20   *Visual Memory*.  I guess the *McRO* case, the *Visual Memory*

21   case, and *Finjan* is somewhat relevant.  And then the *Core

22   Wireless Licensing* case I think is very important.

23             In *Core Wireless*, the Court made it very clear

24   that in this case, we have a user interface and that user

25   interface, again, Your Honor, was asking about a browser and

1    the web server, and that is all it is.

2         Well, *Core Wireless* involves a web server and a

3    browser and a user interface, and the Court found that the

4    claims were not abstract because the user interface was a

5    very specific user interface, and the claim restrains the

6    type of data that can be displayed in the summary window,

7    and the limitations disclose a specific manner of displaying

8    the data.

9         Well, that is exactly what the forms and the

10   limitations in claim 1 about the forms and the limitations

11   about the display are doing.  We are presenting a very

12   restricted, restrained, and specific manner of displaying

13   information.  The *Core Wireless* case is entirely on point.

14        And at the same time, if you look -- if the

15   Court considers the cases where information was -- I'm

16   sorry -- where the claims were held invalid, they're all

17   very, very easily distinguishable.

18        The most recent case is the *SAP* case.  And

19   again, the Court held that the claims simply provided a

20   method of selecting information, using its mathematical

21   techniques and reporting its results without any structure

22   or without any restrictions.

23        The *Voter Verified Inc. v Election Systems* case,

24   again, it's totally abstract because it was directed to the

25   results of verifying a vote without any structure associated

1   with it.

2          The other two cases I have on the slide 23, I

3   can read them, but they're again the Court held that the

4   claims in those cases simply provided a result without

5   providing any structure to how those results were obtained.

6          And, of course, in this case we have been

7   talking about, there is a lot of structure that is

8   associated with how these results are obtained.

9          On slide 24, I cite the *TLI* case because that

10  was the case most heavily relied upon in defendant's

11  briefing.  And, again, if the Court considers the claim in

12  that case, it was a method claim and there was simply no

13  structure associated with that claim at all.  It all was

14  a matter of taking digital images and recording, storing and

15  transmitting them where any kind of, any kind of system

16  would have fallen within the scope.  Because, again, only

17  the results were being claimed, not any structure about how

18  those digital images were conveyed.  And we don't need to go

19  into that.

20          So, in summary, the Court need not get into

21  Step 2 because defendant cannot meet the requirements of

22  *Alice/Mayo* Step 1.  As shown in slide 26, we have been

23  talking about that whole structure that's in the claims.

24  It's not any web server or website but specific improvement

25  in the capability of these computing devices based on the

1    creation of the home page database server, subscriber area,

2    and the use of the billing and data form.

3           We are not just claiming standard communication

4    between the website and the browser but the transfer of

5    billing and data entry forms.

6           This is novel.  It's not conventional and it is

7    structural.

8           I should point out that even if we have to get

9    to Step 2, which I don't think we do, it's clear that these

10   same elements that we are looking at here on slide 26 also

11   inform Step 2 of the *Alice/Mayo* test.  If Step 2 is

12   required, we still have the inventive steps because there

13   is no showing that a subscriber area was conventional or

14   routine.  That the transmission of forms was routine,

15   particularly in 1999.

16          Again, defendant had the burden of proving by

17   clear and convincing evidence the elements of Step 2, and

18   there is nothing.

19          THE COURT:  You have only a few minutes left.

20   Let me ask you a few more questions.

21          First, do I need to make a decision, should I

22   make a decision for all claims or just for claim 1?

23          MR. CONRAD:  Okay.  Claims 2 through 5 are

24   dependent on claim 1, and they do add certain elements.

25   Defendant then separately argue claims 2 through 5.  So it's

1    I don't think we ever -- I understood from their motion that

2    their motion was actually directed to claim 1.

3              THE COURT:  Are you reserving the right to

4    assert claims 2 through 5 in this case?

5              MR. PAZUNIAK:  There is actually claims 2

6    through 7.  Six and 7 are independent claims with some

7    additional material.

8              Yes, we do reserve.  I think we need to get a

9    little more information about defendant's actual technology

10   when we have the exchange of information.

11             THE COURT:  But to the extent you are reserving

12   the right to assert all the remaining claims in the patent,

13   don't I need to make a decision as to their patentability at

14   this point?

15             MR. PAZUNIAK:  Your Honor would have to make a

16   decision as to those claims, although again from plaintiff's

17   perspective, if claim 1 is valid, then by definition, claims

18   2 through 5 are valid.

19             Claims 6 and 7 have additional structures beyond

20   what is in claim 1.  So they're even further removed.

21             That's why I understood that defendant was

22   focusing solely, and only, on claim 1.

23             THE COURT:  You referenced an algorithm.  Is the

24   algorithm that you contend is disclosed here, do I find it

25   in Figures 1 and 3 or do I find it somewhere else?

1          MR. PAZUNIAK:  Figures -- the Florida court gave

2     the structures, and that was in the slides.  It was in D.I.

3     16-3 gave the entirety of the structures.  But, yes,

4     included in the Court's construction was the requirement

5     that it be read in light of Figures 1 and 3.

6          THE COURT:  So it's the claims as construed by

7     the Florida Court, including those structures plus Figures 1

8     and 3.

9          MR. PAZUNIAK:  Yes.

10          THE COURT:  MAYO does say that 101 analysis, you

11     strip away generic or conventional components.  You agree I

12     have to do that; is that right?

13          MR. PAZUNIAK:  I thought that was more of a

14     requirement for Step 2 as opposed to Step 1.  If I am

15     correct on that, I apologize.  But I believe that was a

16     Step 2 issue.

17          THE COURT:  Whatever step it is at, I have to

18     follow that, right?

19          MR. PAZUNIAK:  Yes, yes.  In Step 2, definitely

20     the conventional elements were stripped away.  And we look

21     at the inventive steps.  But, again, we don't know what is

22     conventional because there is no record of that.

23          THE COURT:  All right.

24          MR. PAZUNIAK:  Thank you, Your Honor.

25          THE COURT:  Thank you very much.

1               Mr. Conrad, do you want to come back?

2               MR. CONRAD:  Just a few, Your Honor.

3               To your question, Your Honor, about claims that

4   are, could be compared to one at issue here.

5               Plaintiff brought up the *Voter Verified* case.

6   If you look at that case, it is another example, it doesn't

7   involve the Internet but it is an example of structural

8   components that are put together in order to perform what

9   is just a traditional economic -- well, it's not economic --

10  traditional function.

11              So when you look at that case, you have got:

12              One or more computer programs that are doing

13  various functions related to voting.

14              At least one computer with a display device to

15  perform some voting functions.

16              A printer connected to it.  And,

17              A balloting scanning machine.

18              All of which is a structure that plaintiff

19  alleged was novel and new had not been done before but it's

20  abstract.

21              So I just wanted to put up this figure that

22  plaintiff was relying on.

23              When you look at the things that they were

24  trying to argue was new and conventional, first off, almost

25  all of that is not in the complaint.  What is alleged in the

1    complaint is simply that there is, as a whole, the Internet

2    based billing system is new, novel.

3              Again, novelty is not the test.  It is simply an

4    abstract idea; and there is nothing inventive about the way

5    in which this abstract idea is being performed.

6              THE COURT:  Do you disagree I have to look at

7    all limitations of the claims to assess your motion, don't I?

8              MR. CONRAD:  You do have to look at all the

9    limitations in the claim in order to address whether any

10   individual element there is a new way of doing, a new

11   specific way of doing things.  And then you look at all of

12   them together to see if the idea of the way -- in case all

13   of those are conventional, you look at all of them together

14   to see if that whole idea is a specific tangible way of

15   doing this abstract idea.

16             THE COURT:  That's the ordered combination.

17             MR. CONRAD:  That is the ordered combination.

18             What they have highlighted for you here,

19   however, in the first box is a client PC plus browser.

20             I don't believe plaintiff is alleging that is

21   unconventional.

22             The website is the next part.

23             In 1999, again, I believe I heard him say that

24   that could be conventional.

25             But he said there was a homepage.

1                    I don't think that there is a plausible way that

2       anyone could say that in 1999 there were not home pages on

3       websites.

4                    Then there is something about this box called a

5       subscriber area which the patent doesn't really explain.  At

6       best, what we get is this construction which is structure

7       programmed to be a system component unique to that subscriber.

8                    Well, that doesn't sound like much structure to

9       me, but that's the construction.

10                   As far as it concerns the analysis for Section

11      101, that is just generic.  There is nothing that is interest-

12      ing about a system component unique to that subscriber.

13                   If you want to think about this whole process as

14      billing generally when you've got a business organization

15      with doctors, on one hand, who are representing the client

16      PCs, and the accounting department which would represent the

17      server.  Well, you could say that the subscriber area is

18      really nothing more than going up to the fifth floor and

19      meeting Janice in Accounting in a private conference room.

20      There seems to be nothing different than that analogy in the

21      traditional nontechnical sense.

22                   And this billing and data entry forms.  Well,

23      that's how traditional business processes worked before

24      computers.  You used data forms to pass them back and forth.

25                   When you move into the Internet, well, the

1    technological implementation of the Internet is to move

2    forms back and forth over the Internet as well.

3              So there is really nothing here on an individual

4    level.  At best, it's just a generic component.  At worst,

5    it's admittedly conventional in the patent.  And as a whole,

6    it is simply putting billing systems on the Internet.

7              To the extent that the plaintiff is alleging

8    that any of these particular limitations is novel, as I

9    have mentioned they're generic.  The *Internet Patents v*

10   *Active Network* case is an example where the Federal Circuit

11   said, fine, if you want to say that your invention is this

12   one limitation -- in that case, it was a browser system

13   that the supposed novel piece was maintaining state in

14   the browser.  Well, all they did in that case was claim

15   maintaining state.  They claimed the actual function itself.

16   So here, at best, all they are doing is claiming the

17   function which really doesn't differ from the traditional

18   business process flow of billing.

19             That's all I've got, Your Honor.  I would

20   request that the Court grant our motion.  If there are any

21   other questions?

22             THE COURT:  I do have some questions for you.

23             So it's now clear to me that the plaintiff is

24   asking on this motion that I apply the Florida court's claim

25   constructions.  Do you oppose me doing that?

1           MR. CONRAD:  For the purposes of this motion,

2    no.  Because it sounds to me that that is their allegation

3    of what the proposed claim constructions should be and,

4    therefore, for the purposes of 12(b)(6), you can accept that

5    as true and adopt those.  They don't change the analysis

6    because at best, as you can see here, they are simply

7    generic components like a component in one example, a

8    network device in another example.  And they're just simply

9    performing traditional functions that any accounting and

10   billing system would do with or without computers.

11          THE COURT:  So I also think it is now clear

12   after my discussion with Mr. Pazuniak exactly which

13   limitations he is contending there is at least a factual

14   dispute as to whether they are controversial and nonroutine

15   in 1999.  That was not clear to me before I came in.  I

16   don't know what was clear to you.

17          He also is arguing that the ordered combination

18   is not conventional and not routine or at a minimum there

19   is a fact dispute.  Do you wish to submit any additional

20   briefing or do you think I have what you would want me to

21   have in order to apply these claim terms and then assess

22   whether or not there is even fact dispute on each of these

23   limitations that he has now highlighted?

24          MR. CONRAD:  To begin, Your Honor, that also

25   wasn't clear to me before walking in here today because it

1    wasn't specifically alleged in their briefing and it wasn't

2    in the complaint.  So this would be new arguments that we're

3    hearing today.

4            If there is something that Your Honor does

5    believe at the end of the day, there is a legitimate plausible

6    factual dispute, then we would request the opportunity to do

7    additional briefing, perhaps converting this to a summary

8    judgment motion with an opportunity to submit evidence.

9            If you look at the terms than are mentioned that

10   plaintiff's counsel mentioned, they are at best generic and

11   at worst entirely functional.  And I don't think that even

12   saying that those functions being unconventional would save

13   the day.  Because what we're looking for here is specific,

14   tangible, concrete implementations that would survive the

15   *Alice* test.  And even if you say that this function was

16   unconventional, well, an unconventional function is not

17   going to be a tangible invention.

18           THE COURT:  In terms of which claims I need to

19   assess, I think you and I talked about claims 1 through 5.

20   I don't recall who talked about independent claims 6 and 7.

21   Was your motion directed to them?  Do I need to make a

22   finding on those two claims?

23           MR. CONRAD:  It wasn't clear to me exactly what

24   plaintiff is saying they're reserving the right to assert.

25   It was at least 1 through 5.  If you would like to ask

1    plaintiff for clarification on that, I think that would be

2    helpful.

3                    THE COURT:  My understanding is they're at least

4    not today going to say that they will not assert claims 6

5    and 7 against you.

6                    MR. CONRAD:  Then that sounds to me like there

7    is a live dispute, a controversy about the asserted claims 1

8    through 7, which are all the asserted claims.  Because we

9    requested that all the claims be invalidated under *Alice* in

10   our motion, and we ask the Court to rule on that notion.

11                   THE COURT:  Have you been adequately heard on

12   briefing on claims 6 and 7 or did you want to say something

13   more?

14                   MR. CONRAD:  Those, we have been heard in

15   briefing on those claims.  They're directed to the same

16   abstract idea, Your Honor.

17                   THE COURT:  And what about the application of

18   the concept of the burden of proof?  You heard Mr. Pazuniak

19   say several times I need to find clear and convincing

20   evidence here.  Is that the correct analysis?

21                   MR. CONRAD:  No, because on the face of the

22   patent, the patent is ineligible.  So what we have done is

23   meet any burden of proof that may be out there.  So the

24   burden of proof would shift to the plaintiff to produce

25   something.  I don't know what the standard of proof would be

1    for whatever the issue that he may be referring to, but it's

2    at this point to produce something, some allegation, some

3    concrete factual allegation with specificity that would

4    defeat our motion, and we haven't seen that today.

5            Again, the face of the patent, column 3, lines

6    16 through 17 makes clear that the object of the invention

7    is simply to utilize recent advances in software and

8    Internet-related technology to conduct billing.

9            THE COURT:  Okay.

10            MR. CONRAD:  And so on the face of the patent,

11   we have met every burden at the pleading stage to show this

12   is an ineligible patent.

13            THE COURT:  Is there anything else?

14            MR. CONRAD:  No, Your Honor.  Thank you.

15            THE COURT:  Mr. Pazuniak, you have a minute or

16   two, if you want.

17            MR. PAZUNIAK:  Thank you.  If I could address

18   just a couple minor points.

19            THE COURT:  Yes.

20            MR. PAZUNIAK:  I thought counsel indicated in

21   the reply that our arguments about the factual disputes is

22   something that is entirely new.

23            Actually, our brief raised this issue many

24   times.  And I think we don't really need to go beyond pages

25   16 and 17 of D.I. 15 where plaintiff specifically said

1    defendant has been using the words "conventional," "known,"

2    "understood," et cetera, at least 40 times in its brief.

3    And we pointed out it was all unsupported and disputed.

4              Also, as to claim 1, or which claims were in

5    issue, in our brief, again, D.I. 15 at page 17 -- I'm

6    sorry -- I'm looking at the reply brief, Document 17, on

7    page 3, defendant's argument title is very clear.  Claim 1

8    is patent ineligible under Section 101.  That was the only

9    issue that was briefed.  That was the only one that was

10   moved on, which is why the other claims were not in issue

11   and had not been briefed.  And obviously if the Court wants

12   to consider them beyond, you know, I think that would have

13   to be subject to additional briefing.

14             THE COURT:  Well, yes.  Don't go away.  If I

15   think I need to address anything beyond claim 1, plaintiff

16   is asking for the right to be heard in briefing on that?

17             MR. PAZUNIAK:  Yes.  Absolutely, Your Honor.

18             THE COURT:  I appreciate your reference to pages

19   16 and 17 of your brief, but tell me if I missed it.  I didn't

20   see anywhere that you disclosed which claim limitations you

21   were specifically arguing on which there was a fact dispute

22   about them being something other than conventional and routine.

23             Today, I understood, I think we went through very

24   carefully which ones you are saying we need to treat as having

25   a fact dispute on, as well as the ordered combination.  I

1    didn't see that kind of specificity in your briefing.  Did I

2    miss it?

3              MR. PAZUNIAK:  Your Honor, I don't recall.  I'm

4    looking at this.  I know we argued the means claims in the

5    brief.  I just don't recall what language was used on that.

6    So I know we generally disputed all the arguments of these

7    things being conventional.

8              Thank you, Your Honor.

9              THE COURT:  Mr. Conrad, did you want the last

10    word?  You can come back.

11              MR. CONRAD:  Thank you.  One point, Your Honor,

12    on the asserted claim.

13              In our brief, on the opening brief on pages 11 to

14    12, we did conduct an analysis on all of the claims beyond

15    claim 1.  The plaintiff had an opportunity to address any

16    issues with those claims; and we don't think that further

17    briefing should be warranted.  They had their opportunity.

18              THE COURT:  So I recognize you are not asking

19    for the chance to brief, but should I also understand you

20    oppose their request today for further briefing?

21              MR. CONRAD:  That's correct.  They had their

22    opportunity, Your Honor.

23              THE COURT:  All right.  I think I will have at

24    least a little bit more to say on this.  So we'll take a

25    short recess, and I will come back.

1           (Brief recess taken.)

2               *      *      *

3           (Proceedings reconvened after recess.)

4           THE COURT:  Have a seat.

5           All right.  So what I'm going to do is tell you

6      my inclination for how we proceed from here, and then

7      ultimately the way this ends today is I'm going to give you

8      all a few days to think about what I have to say and to talk

9      with one another and give me your proposal next week as to

10     how you think I should proceed in light of what I'm going to

11     say.

12          My inclination is essentially to tell you to

13     start this case all over.  Basically, I hear the argument

14     for why I should treat the briefing as closed.  That

15     plaintiffs, in particular, have the opportunity to say brief

16     their views on claims 2 through 7.

17          It is somewhat surprisingly to me the defendants

18     don't want the opportunity to brief even though we all learned

19     a lot more about what the plaintiffs are actually arguing

20     today than we learned in the briefing.  But ultimately I'm the

21     one that has to make a decision, and I'm just not confident at

22     the moment that in light of all the new things I heard today,

23     most especially from plaintiff, that I can, in an efficient

24     way, in a way that is fair to the Court, write an opinion and

25     make the decision I have to make without getting further

1      assistance from the parties.

2            So I'm not deciding that today.  I'm going to

3      give you all a chance to tell me why it continues to be your

4      view I shouldn't go down the path that I'm about to lay out

5      as my inclination, but I want to share my inclination.

6            So my inclination is to deny without prejudice

7      the motion to dismiss, give the plaintiff leave to amend to

8      file a new complaint in light of the fact that there has

9      been a lot of intervening decisions from the Federal Circuit

10      since the time this complaint was filed.  There are arguably

11      some relevant statements and some opinions from the Federal

12      Circuit about things plaintiffs might want to do, looking

13      forward to a 101 motion in how they plead, and perhaps the

14      plaintiff should be given the opportunity to take advantage

15      of that new case law and replead.

16            But whether they got leave to amend or not, my

17      inclination is to tell the defendant to renew their motion

18      if they wish, in light of the clarity that we now have, what

19      the plaintiff's position is to as to, for instance, what

20      claims they reserve the rights to assert, what claim

21      constructions should be applied, which claim limitations are

22      nonconventional, nonroutine or for which there are at least

23      a fact dispute on that question, and in light of the cases

24      that have been decided since the briefing.

25            So in an ideal world I would have the parties

1    informed views on all of those points in writing where I

2    could carefully consider them before I have to write an

3    opinion.  And so that is my inclination.

4              That said, if we do start over or have new

5    briefing, I want to move quickly.  Among other things, I

6    have a law clerk here who is only here for three more

7    months.  He is familiar with the technology.  It would be

8    awfully nice to get this resolved by some time let's say

9    mid-October.  So I'm not doing anything right now except

10   telling you kind of where my head is and then asking you to

11   tell me how long do you want to think about this and get

12   back to me your proposals after talking to one another.

13             So, Mr. Conrad, any thoughts?

14             MR. CONRAD:  No, Your Honor.

15             THE COURT:  Okay.  Mr. Pazuniak, any thoughts?

16             MR. PAZUNIAK:  I believe, Your Honor, our

17   inclination, -- I have to talk to co-counsel and the client

18   obviously, but our inclination would be that Your Honor's

19   approach of dismissing without prejudice and allowing the

20   re-filing is fine with us.  There is a lot of new law and it

21   should be considered.

22             We have no problem in a very short briefing

23   schedule, if that should -- you know, if that is the

24   direction Your Honor goes.

25             THE COURT:  Recognizing you need to confer with

1    others on your side and confer with the other side, when

2    would you like me to tell you to report back to me?

3                    MR. PAZUNIAK:  Clients are always difficult, but

4    I believe we should be able to get ahold of the client

5    between today and tomorrow, and so on Monday we should be

6    able to respond from our standpoint.

7                    Obviously, I would like the chance to talk to

8    Mr. Conrad or whoever.

9                    THE COURT:  A week from today, you could get

10   this all done?

11                   MR. PAZUNIAK:  Oh, yes.  Yes.  Definitely.

12                   THE COURT:  Mr. Conrad, what do you think?

13                   MR. CONRAD:  Most likely, I believe my client

14   might have a travel schedule this week, but a week would be

15   fine.

16                   THE COURT:  Let's make it a week from tomorrow,

17   a joint status report in which what I'm looking for is

18   ideally a joint position, but if not, give me a little bit

19   of argument about why each of you has a different position

20   as to how I should now proceed in light of what I have said.

21                   If it turns out that next Friday is very

22   difficult and you need a couple extra days, let me know that

23   before next Friday, and we'll give you some extra time.

24                   Are there any questions?

25                   MR. CONRAD:  None from the defendant.

1                    THE COURT:  Any questions?

2                    MR. PAZUNIAK:  No, Your Honor.  Thank you.

3                    THE COURT:  Thank you all very much.

4                 (Oral argument hearing ends at 12:05 p.m.)

5

6          I hereby certify the foregoing is a true and accurate
   transcript from my stenographic notes in the proceeding.

7

8                         /s/ Brian P. Gaffigan
                          Official Court Reporter
9                          U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25